IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN SPRINGER,

    Plaintiff,

vs.                                      Case No. 1:10cv246-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Steven Springer, protectively filed an application for supplemental security insurance benefits on July 28, 2004, alleging an onset date of July 15, 2003. Doc. 1. After denial by the Administrative Law Judge, the Appeals Council, and this Court in case number 1:07cv108-MP/AK, on motion of Defendant for a sentence four remand, the Eleventh Circuit Court of Appeals entered a mandate to remand. *Id.* and R.

425. On September 1, 2010, the Administrative Law Judge entered a partially favorable decision establishing October 26, 2008, as Plaintiff's onset date of disability for supplemental security income benefits. Doc. 1. Plaintiff seeks judicial review of that decision, asserting Plaintiff's entitlement to supplemental security income benefits between July 15, 2003, and October 25, 2008. Doc. 1, p. 3.

Plaintiff was born on October 26, 1958, and was 51 years of age at the time of the second hearing, and has a high school education, but was found to have no past relevant work.[1] R. 40, 422, 698. Since the alleged onset date of disability, July 15, 2003, the Administrative Law Judge found Plaintiff had the following severe impairments: cervical and lumbar spondylosis, degenerative disc disease of the cervical spine, osteoarthritis of the right hip, and depression and anxiety secondary to physical pain. R. 417. The Administrative Law Judge found that

> prior to October 26, 2008, the [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except low stress, that is, simple, unskilled 1 to 3 step instructions, lift and carry 10 pounds frequently and 20 pounds occasionally, requires a sit or stand option, sit 6 hours total in an 8-hour workday, stand 6 hours total in an 8-hour workday, avoid ascending and descending stairs, avoid pushing or pulling with his lower extremities, avoid hazards in the workplace, work in a relatively clean workplace, occasional balancing, stooping, kneeling, and crawling, but no climbing, *and has a psychological condition that prevents him from performing complex or detailed tasks, but could understand, remember, and carry out simple job instructions*.

---

[1] In the first social security proceeding, the ALJ found that Plaintiff was "capable of performing past relevant work as a handyman" which involves "light duties such as fixing appliances and lights." Doc. 11, p. 26. The transcript from the first hearing reveals that after high school graduation, Plaintiff attended "vocational college at Santa Fe Community College for air conditioning/refrigeration." R. 392. Since July 15, 2003, Plaintiff said he only "worked at little odd jobs." R. 393. In 1998, Plaintiff was treated in the emergency department of North Florida Regional Medical Center in Gainesville and reported working as a pressure-cleaner. R. 104.

R. 418 (emphasis added).

Beginning on October 26, 2008, the Administrative Law Judge found Plaintiff had the "residual functional capacity to perform sedentary work" with the identical limitations identified above. R. 423. Prior to that date, the ALJ determined that "Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and, therefore, was "not disabled" under the Medical-Vocational Guidelines. R. 423. Plaintiff turned 50 years old on October 26, 2008, and under 20 CFR 416.963, his age category changed from a "younger individual age 18-49," to an "individual closely approaching advanced age." R. 422. From that date on, there were "no jobs that exist in significant numbers in the national economy that" Plaintiff could perform and, thus, he is disabled pursuant to Medical-Vocational Rule 201.12. R. 423.

The issue presented by Plaintiff on this review is whether the "ALJ failed to properly assess Plaintiff's mental residual function capacity as required by 20 CFR 404.1545 and SSR 96-8P and as a result, committed error by not asking hypothetical questions to the vocational expert, which comprised all of Plaintiff Springer's mental health limitations arising out of his mental impairments." Doc. 15, p. 1.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

    The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

    1.    Is the individual currently engaged in substantial gainful activity?

    2.    Does the individual have any severe impairments?

    3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

    4.    Does the individual have any impairments which prevent past relevant work?

    5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical evidence**[2]

On March 8, 2004, Plaintiff was given a clinical interview and a mental status examination by Dr. Clifford A. Levin, Ph.D., to determine if he was competent to stand trial.  R. 106-109.  Plaintiff"was also administered a battery of psychological tests."  R. 106.  He had been "charged with Uttering a Forged Instrument stemming from an incident that occurred on August 25, 2003."  R. 106.  Plaintiff had attempted to use traveler's checks at a store by forging the signature of Robert Lambert, for whom Plaintiff had worked as a handyman for approximately 9 years.  R. 106-107.  Mr. and Mrs. Lambert did not plan to press charges against Plaintiff, perceiving him as a "semi-member of the family."  *Id.*

Dr. Levin's notes reflect that as of March, 2004, Plaintiff had received his "A/C Refrigeration Certificate from Santa Fe Community College" and reported that he was "self-employed as a handyman including tiling and painting."  R. 107.  Plaintiff said he "has no history of psychological treatment except for a self-esteem class at Meridian Behavioral Healthcare."  R. 108.  Plaintiff had a Valium[3] prescription "to help with anxiety but this was through his rehabilitation physician."  *Id.*

---

[2]  This evidence is limited to evidence which concerns Plaintiff's mental health and mental residual functional capacity, given the issue presented.

[3] Valium is used in the treatment of anxiety disorders and for short-term relief of the symptoms of anxiety. It belongs to a class of drugs known as benzodiazepines. PDRhealth™, PHYSICIANS' DESKTOP REFERENCE, found at  found at http://www.pdrhealth.com/drugs/drugs-index.aspx.

The test results for Plaintiff revealed he was "suffering from a myriad of psychiatric concerns including depression and anxiety that interferes significantly with his thinking."  R. 108.  Plaintiff "is often chronically worried, tense and even agitated at times."  Id.  Plaintiff was found to be "coping poorly with chronic pain" and because his decision making was based more on emotion than clearly thinking out his options, Dr. Levin found that Plaintiff could pose some difficulty with legal representation.  R. 108-109.  Dr. Levin assessed Plaintiff as competent to proceed, but stated that if his attorney reached an impasse in consultations with Plaintiff, Dr. Levin "would be available to observe a client-attorney interview to more closely assess his competency."  R. 109.  Dr. Levin concluded that although Plaintiff was "already receiving care through a rehabilitation physician," he would "recommend a consultation with a psychiatrist given his myriad of mental symptoms."  R. 109.

Plaintiff reported that he "got treatment" at Meridian Behavioral Healthcare as part of his probation, and he attended "a self-esteem class," but did not have any other outpatient treatment.  R. 63.

Treatment notes from Rehabilitation Medicine Associates reveal Plaintiff was seen on January 15, 2004, for a follow-up visit concerning his complaints of neck, mid back, and low back pain.  R. 182.  Plaintiff reported that he had "finished with his course of training as an a/c repairman" and was "working in the work setting."  Id.

On April 21, 2004, Plaintiff's treatment notes for his back pain indicate Plaintiff was "pleased because he got back to work this past week."  R. 176.  However, Plaintiff had an automobile accident in September, 2004, and while receiving emergency room

treatment, reported he "has been on disability for the last 2 years because of some" prior chronic neck and back pain. R. 127. Plaintiff said he "is disabled and does not work." R. 127.

Plaintiff was evaluated by State Agency Physician, Dr. Susan Conley, on July 28, 2004, and she provided an assessment on October 19, 2004. R. 145, 161. Dr. Conley concluded that Plaintiff had depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified. R. 148, 150. Dr. Conley said that Plaintiff had "been prescribed Valium, apparently for muscle pain, but anxiety (no signs or symptoms) has been noted for a couple of years." R. 157. Plaintiff had no relevant treatment by a mental health professional. *Id.* She noted Plaintiff's concentration and persistence "may vary with mood" and found that Plaintiff was "able to focus on and complete simple tasks." R. 161. She found Plaintiff was "likely to have difficulty persisting with more complex and/or detailed tasks due to physical pain." *Id.* Plaintiff's memory was "grossly intact" and he showed "no evidence of serious limitations." *Id.* His social functioning was within normal limits and he could interact appropriately and communicate effectively. R. 161. Although his judgment could, at times, be compromised by his impulsive nature, this did not "significantly" impair his ability to perform tasks. R. 161.

On April 13, 2005, another mental health evaluation was completed by Andres Nazario, Jr., Ph.D. LMFT, at the request of the Office of Disability Determination. R. 317-319. Dr. Nazario's evaluation noted that Plaintiff had been diagnosed with depression and anxiety disorder, secondary to pain. R. 317. Plaintiff reported the prior

evaluation by Dr. Levin, but had "no other contact with mental health professionals." R. 317. Plaintiff said he was depressed because he could not do the things he used to enjoy, and said "he does not want to go outside or be around people." R. 318. Dr. Nazario found Plaintiff was alert, cooperative, and his memory is in tact. R. 318. Plaintiff's mood seemed anxious, but he was "able to perform most of a series of mental status tests without error or difficulty." R. 318-9. Dr. Nazario concluded that Plaintiff's symptoms, his presentation, and the records reviewed were "consistent with a DSM-IV diagnosis 293.89 Anxiety Disorder Due to Chronic Pain." R. 319. He felt Plaintiff "could benefit from a psychiatric consultation for assessment of his medication regimen" and a recommendation for such services was made. R. 319.

On April 20, 2005, Plaintiff was also evaluated by Alejandro F. Vergara, M.D., who found Plaintiff was not significantly limited in nearly every category for memory, concentration, social interaction, or adaption. R. 320-323. Dr. Vergara found Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, to complete work without interruptions from psychologically based symptoms, and to set realistic goals. R. 320-321. Dr. Vergara wrote that Plaintiff might experience "difficulties trying to maintain concentration for sustained periods of time, more so, when in pain." R. 323. However, he concluded that Plaintiff "retains the mental capabilities necessaries [sic] to do simple, repetitive type tasks and assignments." *Id.* Dr. Vergara found Plaintiff had an anxiety-related disorder due to chronic pain. R. 330. In general, Plaintiff was only mildly limited by that disorder, but had moderate limitation in maintaining concentration, persistence, or pace. R. 334. Plaintiff denied "any mental

health treatment or psych hospital," but was prescribed Valium for pain.  R. 336.  Plaintiff "performed series of mental status tests without difficulties."  *Id.*  He showed no evidence of "thoughts disorder or of cognitive disorder, has good concentration, not suicidal, neither psychotic" but had a history of anxiety disorder, secondary to chronic pain.  *Id.*  Dr. Vergara determined Plaintiff's "limitations are only due to his physical problems."  *Id.*

On May 7, 2005, Plaintiff was seen in the emergency room of the North Florida Regional Medical Center after being assaulted by another individual with a golf club.  R. 338.  Plaintiff reported doing "flooring work" at that time.  *Id.*

On May 28, 2005, Plaintiff was seen again in the emergency room of the North Florida Regional Medical Center for what Plaintiff thought was a spider bite.  R. 348.  At that time, he reported being a "self employed, painter and power washer."  *Id.*  At Plaintiff's follow-up, it was noted that he was "currently not working."  R. 351.

Plaintiff had a psychiatric evaluation on May 30, 2007, by Dr. Adu, at the Gainesville Psychiatry and Forensic Services.  R. 581.  Plaintiff stated that he cried sometimes due to his pain and felt depressed.  *Id.*  Plaintiff was taking medication for anxiety, which was prescribed by his pain doctor.  R. 582.  Plaintiff was diagnosed with mood disorder due to medical illness, depressive disorder, not-otherwise specified, and assigned a Global Assessment of Functioning (GAF) score of 55.[4]  R. 583.  Dr. Adu

---

[4] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.' "  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002) (citation omitted).   A GAF score of 51-60 indicates: "Moderate symptoms ( e.g., flat affect and circumstantial speech, occasional panic attacks ) OR moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or co-workers).  *See*, http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

found that Plaintiff was "motivated to return to work" but his "obstacle to his return to work will be his pain medication as this may affect his ability to function adequately." R. 584.

On December 5, 2007, Plaintiff had a vocational evaluation performed at the Santa Fe Community College Work Exploration Center. R. 478-485. Plaintiff was in obvious pain and had difficulty staying awake during the testing. R. 479-480. Although Plaintiff expressed an interest in pursuing training in computer repair or graphic design, the examiner concluded that it was not feasible for Plaintiff to return to employment at that time due to his "significant pain and limited stamina." R. 483.

**Evidence from the Second Hearing, July 16, 2010**

Plaintiff said when his application for social security benefits was initially filed in 2004, he was "working as a handyman for some people that were out of the country a lot of the time and also doing some pressure washing on the side and some painting." R. 700. Plaintiff testified to his pain and said it is so bad he "can't even hardly think." R. 707. He said, "I mean, it's just totally disrupted my thought patterns and depression and I stay in bed a lot and all that kind of good, fun stuff." *Id.* He said that since July of 2004, his ability to concentrate and stay on task has "gotten worse." R. 707. Plaintiff said his "mind wanders" and that it happens "at least two-thirds of the day." *Id.* Plaintiff said he doesn't want to be around people, and that it is hard for him "to go out." R. 708. He just wants to "stay home and not go anywhere." *Id.* He usually stays inside his home "about five days a week." *Id.* In addition to his pain medications, he takes "one

Valium per day, 10 milligram." R. 709. Plaintiff said that two or three days a week he does not want to go out due to depression and anxiety.

At the end of the hearing, the ALJ asked the opinion of Howard Feldman, a vocational expert, whether a hypothetical person with certain limitations could perform work. R. 711. The question posed to the expert provided Plaintiff's physical limitations, age, education, past work experience, and who would "require work which is low stress, simple, and unskilled with one, two, or three-step instructions." R. 711. The ALJ also added, "And psychological-based symptoms affects his ability to concentrate upon complex or detailed task, but he would remain capable of understanding and remembering and carrying out simple job instructions." R. 711. The vocational expert listed some unskilled jobs that Plaintiff could do with the limitations assigned, including cashier II, fast-food work, and parking lot attendant. R. 712.

**Legal analysis**

Plaintiff points out that "in order for the testimony of a Vocational Expert "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999); and, the ALJ must pose a hypothetical question to the vocational expert which comprehensively describes the claimant's impairments. Pendley v. Heckler, 767 F. 2d 1561, 1563 (11th Cir. 1985) (holding that since the hypothetical question upon which the expert based his testimony failed to assume the existence of psychological problems, which the ALJ found to be severe, the decision was not based on substantial evidence)." Doc. 15, p. 17.

At each relevant step of the analysis, the Administrative Law Judge considered Plaintiff's mental residual functional capacity.  At step two, the ALJ concluded that since the onset date of July 15, 2003, Plaintiff had the "severe" impairment of "depression and anxiety secondary to physical pain."  R. 417.  At step three, he concluded the Plaintiff's "mental impairment(s) does not satisfy the paragraph 'C' criteria of the applicable mental disorder listing(s)."  R. 418.  At step four, the ALJ acknowledged that Plaintiff's "psychological condition" prevented him "from performing complex or detailed tasks, but [he] could understand, remember, and carry out simple job instructions."  *Id*.  The ALJ considered that there were "no on-going mental health treatment notes in [the] record and anxiety seem[ed] to be associated with the claimant's physical pain."  R. 419.  The ALJ noted that the mental status evaluation from April, 2005,revealed fair insight and judgment, "no evidence of hallucinations, delusions, or obsessions, no suicidal or homicidal ideation, normal concentration, and average intelligence."  *Id*.  The ALJ considered Dr. Nazario's opinion that Plaintiff "was able to concentrate" and he could "follow and understand directions."  *Id.*  He acknowledged that Dr. Nazario thought Plaintiff "would benefit from on-going psychotherapy," *id.*, but no "mental limitations" have ever been placed on Plaintiff's ability to work.  R. 420.  Indeed, in 2006 and 2007, Plaintiff reported that he was working anywhere from 20 to 30 hours per week.  R. 420-421.  See R. 636 (September 25, 2006, laying tile 20 hours a week); R. 627 (June 5, 2007, working as a painter and pressure washer 30 hours a week); R. 622 (October 19, 2007, working with drywall 30 hours a week).  The ALJ pointed out that in May of 2007, Plaintiff was evaluated by Dr. Adu, who diagnosed Plaintiff with mood disorder,

depressive disorder, and he was assigned a GAF score of 55 (which indicates only moderate limitations, see footnote 4, *supra*) . *Id.*

At step five, the ALJ considered that Plaintiff had additional limitations on his ability to perform all or substantially all of the requirements of light work and so asked the vocational expert to testify as to Plaintiff's ability to perform the requirements of "work which is low stress, simple, and unskilled with one, two, or three-step instructions."  R. 711.  The ALJ also added that "psychological-based symptoms affects his ability to concentrate upon complex or detailed task, but he would remain capable of understanding and remembering and carrying out simple job instructions."  R. 711.  The answer was that Plaintiff could perform light, unskilled work such as a cashier II, fast-food work, or parking lot attendant, and there were significant numbers of those jobs in the Central Florida area and in the national economy.

In summary, the ALJ considered Plaintiff's mental impairments in determining his residual functional capacity and all limitations he found are supported by substantial evidence in the record.  Those limitations were used to pose the hypothetical question to the vocational expert.  The ALJ's decision should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 7, 2011.

                                       s/    William C. Sherrill, Jr.
                                       **WILLIAM C. SHERRILL, JR.**
                                       **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**